**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 7 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

LIBERATO OLIVAS,

      Plaintiff - Appellant,

v.

CITY OF HOBBS; STAN DURHAM;
DAVE GARTMAN; TONY KNOTT;
RODNEY PORTER; ORIN TUBBS,

      Defendants - Appellees.

No. 01-2266
D.C. No. CIV-99-1304 BB/RLP
(D. New Mexico)

---

**ORDER AND JUDGMENT**   *

---

Before **KELLY** and **BALDOCK** , Circuit Judges, and   **BRORBY** , Senior Circuit
Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff-Appellant Liberato Olivas brought this action against the City of Hobbs, New Mexico, and certain police officers pursuant to 42 U.S.C. § 1983. Olivas alleges that he was denied his constitutional rights when police arrested him for possession of marijuana after a traffic stop. After a trial in March 2001, the jury awarded Olivas damages against police officer Stanley Durham for unlawfully "planting" evidence on Olivas and wrongfully arresting him. The district court then granted defendants' motion for a new trial based on the jury's apparent misunderstanding of the case and its use of an improper definition of a term crucial to Olivas's claim. A second jury returned a verdict in favor of Officer Durham. Olivas has appealed, arguing the district court erred in granting the motion for new trial. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## I.

Olivas was riding in the front passenger seat of a car driven by Jose Pena, when Officer Durham stopped the car for erratic driving. Suspecting that Pena had been drinking, Officer Durham had all of the occupants step out of the car and waited for a backup officer before beginning roadside sobriety tests. After backup arrived, Durham performed the tests, which Pena failed. Pena was arrested for driving under the influence and searched before being placed into a

patrol unit. After finding drug paraphernalia in Pena's pockets, Officer Durham obtained Pena's consent to search the car.

According to Officer Durham, he searched the car only once and found, among other things, a matchbox containing a small quantity of marijuana on the floor near the front passenger seat. According to Olivas, however, Officer Durham searched the car twice, the second time planting the incriminating evidence in order to arrest Olivas. Olivas was arrested for possession of marijuana, but was acquitted and subsequently filed this action under § 1983 for deprivation of his constitutional rights.

At trial, Olivas laid out the factual predicate for his claim against Officer Durham. Olivas testified:

> And then he searched the car one time, didn't found [ *sic* ] nothing in there. Then I told [another passenger], "You better watch them, watch their hands, see what they are doing, because they might frame you or set you up."
>
> Mr. Stan Durham heard that and he went over to his patrol car, extended his hand, his right hand and got something from the car, and then came back to where I was sitting. I was on the outside of the vehicle. And he stuck his hands inside of there. And he said, "Look what I found." And then he came over to where I was, me and Officer Morales, and he opened that box.

Aplt. App. at 3, 4. Later, Olivas answered the following questions in order to clarify his claim:

> Q. Your testimony before was that he took that box out of his squad car and put it in there?

-3-

A. Yes.

Q. So he planted that evidence?

A. He planted it in there.

*Id.* at 6.

During trial, jurors submitted the following four questions for the court to ask the Hobb's Chief of Police: (1) "If it was Pena's car, why wasn't he charged with marijuana possession?"; (2) "Was any drug paraphernalia found on Mr. Olivas?"; (3) "Is it standard procedure to charge with possession whoever sat closest in the car to an illegal substance"; and (4) "Was the driver of the car charged with anything other than driving under the influence of alcohol?" *Id.* at 17-18. Answering these questions, the chief explained that Pena was charged with DUI and possession of drug paraphernalia. He was not charged with possession of marijuana because there were no drugs found within his reach. Further, the chief testified that no drug paraphernalia was found on Mr. Olivas, but that generally, without additional evidence incriminating another, the police will charge the person who is known to have been closest to the illegal substance.

During closing argument, Olivas's counsel summarized the illegal stop and arrest claim. Counsel argued that,

> as a result of the stop, [Olivas] was charged with possession of marijuana based upon the actions of Officer Durham, who planted evidence in the vehicle. The testimony was that Mr. Olivas had warned [another passenger] that he might be set up by the officer.

-4-

> Mr. Olivas then testified that he witnessed a match box being placed in the vehicle that had not been in the vehicle prior to the stop.

Aplee. Supp. App. at 22-23.

After hearing the evidence, the jury was given its instructions, which were read without objection. The court cautioned the jury not to question the wisdom or correctness of any rule of law supplied by the court and to base the verdict "solely upon the evidence in the case." *Id.* at 19. The court summarized Olivas's wrongful arrest claim, stating "Plaintiff alleges that defendants planted evidence in order to arrest him, even though no probable cause existed for such an arrest." *Id.* The court then instructed the jury that Olivas could prevail on his § 1983 claim if he proved, by a preponderance of the evidence, that defendants deprived Olivas of his constitutional rights by "planting evidence in order to arrest [Olivas] without having probable cause to do so, . . . and/or subjecting [Olivas] to malicious prosecution." *Id.* at 21. In explaining the offense of malicious prosecution, the court instructed the jury that for Olivas to prevail, he must prove, among other things, "that defendants initiated criminal proceedings by filing charges against [Olivas] without probable cause, and planted evidence in order to do so." Aplt. App. at 23. The court further instructed, "[p]robable cause means that the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information, are sufficient to lead a prudent person to believe that the arrestee has committed or is committing a criminal

offense." *Id.* at 21-22. Significantly, the terms "planting evidence" and "planted evidence" were not defined.

During its deliberations, the jury sent the court the following question:

Does "planting the evidence on him," for purposes of question one, include the situation where Durham actually finds the marijuana in the car, but charges Olivas with possession, even though a reasonably prudent person would have believed Pena was in possession of the marijuana, not Olivas, or does moving marijuana from one car to another essential to the planting definition?

*Id.* at 24-25. The question sparked a debate over the meaning of the question and the appropriate court response. Counsel for Olivas commented, "I never had thought of that, to be honest with you," and stated, "I think that the question is sufficiently ambiguous that we shouldn't answer it." *Id.* at 24, 28. Counsel for Officer Durham argued that the jury was obviously confused and, concerned that the jury was considering a legal theory of liability not pled in the case, urged the court to answer the question in order to provide guidance. Concluding that the jury was confused, but unable to adequately determine the precise meaning of the jury's question, the court sent a reply stating only that the term "planting evidence" is not defined by law, and that the jury should rely on the other instructions and common sense to come to a decision. *See* Aplee. Supp. App. at 24; Aplt. App. at 28-29.

The next day, the jury reached a verdict against Officer Durham, specifically finding "by a preponderance of the evidence that Defendant Stanley

-6-

Durham violated [Olivas's] Fourth Amendment rights by planting evidence on him and then wrongfully arresting him." Aplee. Supp. App. at 26. Along with the verdict the jury returned a note which read:

> The Court instructed that "planting evidence on him" is not defined in the law. We define "planting evidence on him" to mean assigning possession of the Marijuana to Mr. Olivas rather than Jose Pena without probable cause. We do not find that Ofc. Durham or any other officer placed, or introduced marijuana into the car driven by Mr. Pena.

Aplt. App. at 31. [1]

Defendants moved for a new trial based on the language in the note accompanying the jury's verdict. The district court granted the motion, stating that "[t]he verdict, augmented by the jury's note, demonstrates the jury misunderstood both the factual basis of [Olivas's] claim and the controlling law." *Id.* at 35. The court found that the jury relied on an incorrect definition of "planted evidence" and that the verdict, with the note, made it unclear as to whether the jury followed the proper law.

At the second trial on the claims against Officer Durham, the jury was instructed that in order to find Officer Durham planted the evidence, it must find that Durham "did not find the marijuana in the vehicle [Olivas] was riding in." Aplee. Supp. App. at 32. That jury returned a verdict for Officer Durham.

---

[1] The note was read to the parties after the jury was dismissed and unavailable for further deliberations or questioning for possible clarification.

-7-

## II.

The only issue raised by this appeal is whether the district court erred by granting the motion for a new trial. Appellees contend that Olivas failed to preserve this particular issue for appeal because he: (1) did not object to the instructions in the first or second trial; (2) did not clarify the instructions when the jury appeared confused through their note; and (3) failed to move for a new trial or judgment as a matter of law after conclusion of the second trial. We find no merit to this argument. While the parties and the court suspected juror confusion during deliberations concerning the term "planting evidence," until the court disclosed the jurors' note defining that term, neither party knew of any particular error in the jury's verdict. Olivas timely objected to defendants' motion for new trial based on the jury's construction of the term, and when that motion was granted Olivas properly waited until after final judgment in the second trial to seek review of the district court's decision. *See Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 34 (1980) (noting the general rule that orders granting motions for new trials are not final and therefore not immediately appealable); *Delano v. Kitch,* 663 F.2d. 990, 1001 (10th Cir. 1981) (same); *see also Kanatser v. Chrysler Corp.,* 195 F.2d 104, 105-06 (10th Cir. 1952) (stating that the grant of a new trial, while not immediately appealable, is reviewable after final judgment in the second trial). While Olivas's failure to object to the

-8-

relevant instructions throughout his two trials has undoubtedly precluded appellate review on a number of issues, we conclude that Olivas has preserved for review the question of whether the trial court erred in granting the motion for a new trial.

### III.

We review the district court's decision to grant a motion for new trial for abuse of discretion. *Weese v. Schukman,* 98 F.3d 542, 549 (10th Cir. 1996). "[We] will reverse the court's decision only if we have a definite and firm conviction that the [district court] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Mayhue v. St. Francis Hosp. of Wichita, Inc.,* 969 F.2d 919, 922 (10th Cir. 1992) (quotations omitted). Mindful of the deference generally afforded a district court in managing its trials, we give the trial judge wide latitude with respect to a motion for a new trial, as that judge is uniquely able to assess the merits of the motion. *See id.* at 922.

This latitude extends to the trial judge's singular ability to evaluate the prejudicial effect of a jury's reliance on improper definitions of essential terms in the instructions. In *Mayhue,* we affirmed the district court's decision to grant a new trial because there was credible evidence to support the court's conclusion that the jury relied on its own, uninstructed definitions of terms crucial to the cause of action, and because its reliance on those definitions was prejudicial. In

that case, we stated "[t]he trial judge presided over the proceedings from start to finish; thus, he knows better than we how the definitions might have diverted the jurors' attention away from the theories presented at trial and the instructions that were to govern their deliberations." *Id.*

In *Mayhue* and cases like it, the jury's use of uninstructed "dictionary definitions" increased the possibility of infecting a trial with "extraneous prejudicial" information. [2] Unlike *Mayhue,* the jury in the present case was not provided with extraneous material. Here the jurors' note appears only to evidence their collective reasoning behind the verdict by articulating their own definition of "planting evidence." Nevertheless, the rationale of *Mayhue* instructs us in a case, such as this, where the jury attaches its own meaning to a term undefined in the instructions and expresses that meaning to the court as the basis for the verdict. The trial court may not ignore it, and if the meaning is incorrect or demonstrates obvious confusion over a term crucial to the resolution of the case, the court may, in its discretion, order a new trial.

---

[2]     After the verdict was returned in *Mayhue,* the court's staff discovered a handwritten note in the jury room that contained definitions of key words used in the jury instructions. The *Mayhue* court was careful to note that, while the definitions used by the jury in that case were assumed to have come from an actual dictionary, the origin of the defined terms was immaterial to its decision because, "regardless of the private source of the handwritten definitions, it remain[ed] clear that the jury was presented with extraneous prejudicial information." *Mayhue,* 969 F.2d at 921 n.4 (further quotation omitted).

In granting the new trial in the present case, the district court found that the jury note accompanying the verdict in the first trial evidenced jury confusion and demonstrated that the jury rejected Olivas's own theory presented at trial that Officer Durham took incriminating evidence from another location and placed it inside the car. Additionally, the court found the note left the jury's verdict unclear as to whether the jury followed instructions on the proper law to be applied to the case.

The district court concluded a new trial was required, and there is credible evidence in the record to support the court's decision. We agree with the district court that the jury's adopted definition, which transcended Olivas's own theory of liability as well as the evidence presented at trial, demonstrated at least that the jury misunderstood the factual predicate of Olivas's claim, and left the verdict unclear as to whether the jury followed the proper law as instructed by the court. Under these circumstances, and given our very narrow standard of review, we conclude that the district court did not abuse its discretion in granting the motion for new trial.

We have carefully considered Olivas's remaining arguments on appeal and conclude that they are without merit.  The judgment of the United States District Court for the District of New Mexico is AFFIRMED.


Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge